IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF OHIO WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. c-1-80-369 |
| CITY OF CINCINNATI, OHIO et al., | ) | |
| Defendants. | ) | |

**MODIFIED CONSENT DECREE**

This action was initially brought in 1980 by the United States against the Defendants, the City of Cincinnati ("City"), the Cincinnati Police Division (now commonly known as the Cincinnati Police Department ("CPD" or "Police Department")), and the members of the Cincinnati Civil Service Commission (collectively the "City Defendants") to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., ("Title VII"). This Court has jurisdiction over this action under 42 U.S.C. § 2000e-6 and 28 U.S.C. §§ 1343(a)(3) and 1345.

In its Complaint, the United States alleged that the City Defendants were engaged in a pattern or practice of discrimination in employment on the basis of race (black) and sex (female), in violation of Title VII. On August 26, 1980, Queen City Lodge No. 69, Fraternal Order of Police ("FOP") was granted leave to intervene as a party defendant in this action.

In August 1981, the United States, the City Defendants, and the FOP entered into a Consent Decree (the "Original Consent Decree") to resolve all claims in the United States' Complaint. The

Original Consent Decree did not constitute an admission, adjudication, or finding on the merits of the case, and the City Defendants denied that any unlawful discrimination had occurred.

The Original Consent Decree did not specify a particular date of expiration, but rather permitted the City Defendants to notify the United States of their intention to terminate the Decree any time after five years from the date of the Decree. (*See* Original Consent Decree ¶ 9). Neither the United States nor the City Defendants have moved to terminate the Original Consent Decree since it was entered by the Court in 1981.

Throughout the City's hiring and promotion cycles since 2012, the United States and the City have been evaluating the City's compliance with the Original Consent Decree and whether the City's current Police Officer and Police Sergeant selection procedures comply with Title VII and are job-related and consistent with business necessity.

The United States and the City Defendants are seeking a modification of the Original Consent Decree based upon changed circumstances as recognized in the Court's Order Granting Plaintiff's Motion to Modify the Consent Decree.  Doc. 198 at PAGEID 231 (Sept. 15, 2021) (noting an increase in both minority and female representation within CPD from 9.9% and 3.4% respectively in 1980 to 28.3% and 22.9% in 2021).  Additionally, circumstances regarding how the City hires certain law enforcement officers has changed as well.  In 2001, Cincinnati voters approved a Charter amendment that provided for the positions of police chief and assistant police chief to be in the unclassified civil service and exempt from all competitive examination requirements. Cincinnati Ordinance 238-2001.  In 2018, Cincinnati voters approved an amendment to the City's Charter that provides that graduates of a public safety academy established by Cincinnati Public Schools in collaboration with the City of Cincinnati be provided an incentive to

serve the City in the fire and police departments through an award of 5 points in examination credit on departmental entry level examinations. Cincinnati Ordinance 252-2018. On November 15, 2021, the City filed a Notice of Appeal regarding the Court's September 15, 2021 Order. On July 11, 2022, the City filed a Motion to Dismiss the Appeal. On July 11, 2022, the Sixth Circuit dismissed the Appeal and remanded the case to this Court.

In this Modified Consent Decree ("Modified Consent Decree"), the Parties recognize the effect of this Court's September 15, 2021 order which terminates the provisions of the Original Consent Decree that provide for interim race- and gender-based goals as a means to achieve the short- and long-term goals of the Original Consent Decree (see Original Consent Decree ¶¶ 2(A)–(B)); and agree to put into place a process by which the City, in consultation with an expert, will consider expert recommendations about current best practices to recruit, promote, and retain black and female personnel using race- and gender-neutral means in order to ensure that the Police Department continues its progress toward achieving diversity following the termination of the short- and long-term goals. The City will further determine which best practices it will adopt after full consideration of the expert recommendations, to include whether the best practices are consistent with its obligations under federal, state, and local law and adhere to the terms of applicable collective bargaining agreements. This Modified Consent Decree ("Modified Consent Decree") specifies a period of time to allow for adequate review of the City's efforts as described above. During that time period, the United States will continue to review the City's current Police Officer and Police Sergeant selection procedures to "[e]nsure that blacks and women are not disadvantaged by the [City's] hiring [and] promotion[al] … practices." (Original Consent Decree at ¶ 2). The Modified Consent Decree establishes a specific termination date for the Decree.

In order to implement the Court's Order of September 15, 2021, and to resolve all claims in this matter and avoid the burden of protracted litigation, the United States and the City Defendants enter into this Modified Consent Decree and agree to waive hearings and findings of fact and conclusions of law on all remaining issues in this case.

In resolution of this action, with the consent of the Parties, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

## I. DEFINITIONS AND PARTIES

1. The "Parties" to this Modified Consent Decree are the United States, by the Department of Justice, ("United States"), the City of Cincinnati, the Cincinnati Police Department, and the members of the Cincinnati Civil Service Commission (the "City Defendants").

2. "Days" refers to calendar days unless business days are clearly specified in the context of a specific provision of this Modified Consent Decree. If any deadline referenced in this Modified Consent Decree should fall on a weekend or federal holiday, the deadline shall be moved to the next business day.

3. The term "date of entry" of the Modified Consent Decree refers to the date on which the Court orders entry of the Modified Consent Decree pursuant to Section IV of this Modified Consent Decree.

4. "Police Officer(s)" refers to the entry-level sworn position in the Cincinnati Police Department or any person who was hired as a police officer for the City Defendants' police department upon completing all required steps in the selection process.

5. "Police Sergeant" refers to the sergeant position in the Cincinnati Police

Department or any person who was hired as a police sergeant for the City Defendants' police department upon completing all required steps in the selection process.

6.      "Selection device" refers to any examination, test, requirement or criterion used to evaluate a person's qualifications for appointment to the position of Police Officer or Police Sergeant (*e.g.*, written examination, multiple choice test, writing exercise).

## II.      PURPOSE OF MODIFIED CONSENT DECREE

7.      The purpose of this Modified Consent Decree is to ensure that the City Defendants comply with Title VII by using selection procedures that do not unlawfully discriminate on the basis of race or sex in the hiring of applicants for the position of Police Officer and in the promotion of applicants to the position of Police Sergeant.

## III.      GENERAL INJUNCTIVE RELIEF

8.      The City Defendants, their officials, agents, employees, and successors, and all persons acting on behalf of or in active concert or participation with the City Defendants, are enjoined from using, in the hiring of Police Officers or the promotion of Police Sergeants, any selection device that has a disparate impact upon black or female candidates on the basis of race, sex or both, and is not job-related for that position and consistent with business necessity, or otherwise does not meet the requirements of Title VII.

9.      The City Defendants, their officials, agents, employees, and successors, and all persons acting on behalf of or in active concert or participation with the City Defendants, are enjoined from engaging in any act of retaliation or act which in any respect adversely affects a person on account of that person's participation in or cooperation with the litigation or administration of this case or this Modified Consent Decree.

10. This Modified Consent Decree supersedes the Original Consent Decree and upon entry of this Modified Consent Decree, the Original Consent Decree shall no longer be operative.

11. The City Defendants shall designate a person who shall be responsible for assuring their compliance with the provisions of this Modified Consent Decree. The designated person's responsibilities shall include, but not be limited to, ensuring that the City Defendants fully implement and comply with all paragraphs of this Modified Consent Decree.

## IV. ENTRY OF THE MODIFIED CONSENT DECREE

12. If the Court determines, on consideration of the Parties' contemporaneously filed motion(s) and any other process the Court directs, that the terms of this Modified Consent Decree are fair, adequate, reasonable, as well as consistent with the public interest and otherwise consistent with federal law, the Court shall enter the Modified Consent Decree.

## V. CITY'S ENGAGEMENT OF CONSULTANT TO IDENTIFY BEST PRACTICES

13. No later than thirty (30) days after the date of entry of the Decree, the City shall retain a consultant with expertise in the areas of diversity and inclusion in public safety employment environments to review the Police Department's hiring and promotional processes. That consultant shall provide recommendations to the City Defendants for incorporating best practices for the recruitment, hiring, promotion, and retention of black and female applicants to the positions of Police Officer and Police Sergeant. As part of the review, the consultant shall solicit input from community stakeholders identified by the City, including but not limited to the Fraternal Order of Police Queen City Lodge 69 and the Cincinnati Police Sentinel's Association. The City will provide a copy of this Modified Consent Decree in any Request for Proposal, if a competitive process is used. The City will include a copy of this Modified Consent Decree as an

exhibit to any contract with the consultant.

14. No later than one hundred and eighty (180) days after the date of entry of the Decree, or other time period as reasonably established by the City's consultant and agreed to by the Parties, the City's consultant shall provide the City Defendants with a report which:

  a. identifies and evaluates the effectiveness of the Police Department's various recruitment activities at reaching and successfully recruiting black and female candidates for employment in sworn positions;

  b. identifies best practices for the recruitment of the black and female sworn workforce, and police officer candidates in particular;

  c. recommends changes and tactics the Police Department can use to improve the effectiveness and efficiency with which it recruits black and female police officer candidates;

  d. identifies and evaluates the effectiveness of the public safety academy operated in partnership with Cincinnati Public Schools, specifically examining the funding needs of a successful program and making recommendations for changes to the current approach;

  e. identifies and evaluates approaches to engage and attract youth between the ages of 18 and 21 to law enforcement careers;

  f. examines the feasibility of providing incentives to City residents to apply for positions within the Police Department;

  g. recommends measurable and lawful short-term and long-term objectives for the recruitment of black and female police officer candidates;

h.   identifies and evaluates the effectiveness of the Police Department's various activities aimed at retaining and promoting black and female police officers;

i.   identifies lawful best practices for the retention and promotion of the black and female sworn workforce, and police sergeant candidates in particular;

j.   recommends lawful changes and tactics the Police Department can use to improve the effectiveness and efficiency with which it retains and promotes black and female police sergeant candidates, including examining the length of time promotional eligibility lists are in effect;

k.   recommends measurable and lawful short-term and long-term objectives for the retention and promotion of black and female police sergeant candidates and;

l.   in light of the findings and recommendations contained in sub-paragraphs (a)-(k), identifies the resources needed by the Police Department to meet its goals, and recommends minimum and ideal budgets for the Police Department to accomplish such goals.

15.   Nothing in this Modified Consent Decree prevents the City from requesting that the consultant additionally consider recruitment, promotion, and retention of Hispanic, Asian-American and Pacific Islander, and Native American candidates, nor does this Modified Consent Decree prohibit the City from requesting that the consultant consider retention of all Cincinnati Police Officers.

16.   No later than sixty (60) days after receiving the consultant's report, the City shall provide the United States with a copy of the consultant's report, along with its response to the

consultant's report. The City's response shall identify whether the consultant's recommendations are consistent with federal, state, or local law, including collective bargaining agreements; which of the consultant's recommendations it intends to adopt; the steps the City will take to implement the recommendations it intends to adopt including funding for the implementation; and a proposed timeline for the steps identified. If any of the recommendations the City intends to adopt conflict with applicable state or local law or the applicable collective bargaining agreements, the City will include in its proposal steps within its lawful authority for addressing any such conflicts.

17.      No later than thirty (30) days after receiving the City's response and the consultant's report, the United States shall inform the City in writing either that it has no objection to the City's response to the consultant's report, or that it objects to the City's response to the consultant's report. The United States may object to the City's response if it believes that any aspect of the response does not conform to the objectives of the Modified Consent Decree or to any controlling legal standards. If the United States objects to the City's response, it shall state the basis for its objections in the notice required by this paragraph. If the United States objects to the City's response to the consultant's report, the City and the United States shall meet and confer and use their best efforts to resolve any resulting dispute about whether the City's response complies with the Modified Consent Decree and controlling legal standards. If the United States' objections are resolved during the meet and confer process, it shall provide the City with written notice that it has no further objections. If the United States and City are unable to resolve such a dispute within twenty-one (21) days of the date of the United States' objections, the United States or the City will follow the procedures set forth in Paragraph 35 regarding disagreement as to compliance with the Modified Consent Decree.

18. After receiving the City's response and the consultant's report, the Department of Justice's Civil Rights Division will identify competitive funding opportunities offered by the Department of Justice that relate to the subject matter of the consultant's recommendations that the City intends to implement. The Civil Rights Division will notify the City of any relevant funding opportunities for which it may wish to consider applying for during the 2023 or 2024 application cycle, whichever is applicable.

19. The City shall begin implementing the actions identified in its response to the consultant's report no later than thirty (30) days after the United States notifies the City that it has no objections to the City's response or that its objections have been resolved or, absent agreement, when ordered by this Court.

## VI. REVIEW OF CITY'S SELECTION PROCEDURES

20. The City will use lawful selection devices to select qualified candidates for hire to the position of Police Officer and for promotion to the position of Police Sergeant that meet the requirements of Title VII. The selection devices shall either have no statistically significant disparate impact on the basis of race or sex, or shall have been demonstrated to be job-related for the Police Officer position and Police Sergeant positions. If a selection device has a statistically significant disparate impact on the basis of race or sex, the City will be in compliance with this provision if it evaluates whether there are alternative uses of the selection device that have less disparate impact and are substantially equally valid and, if so, adopts such an alternative use (including an alternative proposed by the United States pursuant to Paragraphs 23 or 28 herein).

### A.    Review of Police Officer Hiring

21.    Production of Police Officer Hiring Data from June 2018-Entry of Decree: No later than thirty (30) days after the date of entry of the Decree, the City shall provide to the United States the following data upon which any eligibility list was based for the Police Officer position from June 2018 through the date of entry of this Decree.

   a.  Information identifying (by title, series or identification number, vendor, and author/developer) and describing each selection device (e.g., application, written examination, reading examination, video test, report writing test, physical agility test) that has been used as part of the application, selection, and hiring process for the Police Officer position in the Cincinnati Police Department during the relevant time period, including any selection devices used during training academy or probationary periods (e.g., training academy examinations, written examinations, probationary evaluation forms).

   b.  Information in Excel format identifying the name, unique identifier, gender, race, scores and applicable sub-scores on all components of the selection process, any applicable combined and final scores, military, veteran's, seniority, or other bonus points, and the ranks for each applicant who participated in the selection process, if applicable, whether the applicant was disqualified or hired, the date of disqualification or hire, or other reason the applicant was not selected (e.g., withdrew from process, declined offer, not reached on eligibility list, etc.).

   c.  Information relating to the scoring system and any passing or cut-off score

11

applicable to each selection device identified in sub-part (a) herein, including the manner in which the selection device has been used as part of the application, selection, and hiring process (e.g., whether it has been used on a pass/fail basis, for ranking applicants, for banding), and the distribution of scores by race and sex for each administration of each selection device.

d. Answer keys and item-level data (e.g., test question responses for each candidate) for each selection device identified in subpart (a) herein.

22. Production of Police Officer Hiring Data after Entry of Decree: No later than thirty (30) days after the completion of the administration and scoring of the City's first entry-level examination administered after the entry of the Modified Consent Decree on which any Police Officer eligibility list may be based, the City shall provide to the United States the following information.

a. Information identifying (by title, series or identification number, vendor, and author/developer) and describing the entry-level examination.

b. Information in Excel format identifying the name, unique identifier, gender, race, scores and applicable sub-scores on all components of the entry-level examination, any applicable combined and/or final scores, military, veteran's, seniority, or other bonus points, and the ranks for each applicant who participated in the selection process.

c. Information relating to the scoring system and any passing or cut-off score applicable to all components of the entry-level examination identified in sub-part (a) herein, including the manner in which the entry-level examination has

12

been used as part of the application, selection, and hiring process (e.g., whether it has been used on a pass/fail basis, for ranking applicants, for banding), and the distribution of scores by race and sex for all components of the entry-level examination.

d. The City will provide the answer keys and item-level data (e.g., test question responses for each candidate) for all components of the entry-level examination.

23. Within ninety (90) days of the City providing the information identified in Paragraphs 21 and 22, the United States must either propose an alternative use of the entry-level examination that is substantially equally valid to the City's use and results in less disparate impact on the basis of race, or notify the City that it has not identified such an alternative use. If the United States makes an alternative use proposal, it will provide the City with a written justification of the proposal explaining its analyses. The City will evaluate whether it will adopt the alternative use recommended by the United States and inform the United States of its decision within thirty (30) days of receiving the United States' proposal. The Parties shall meet and confer in good faith to attempt to resolve any disagreement. If the United States and City are unable to resolve such a dispute within twenty-one (21) days of the date of the United States' objections, the United States or the City will follow the procedures set forth in Paragraph 35 regarding disagreement as to compliance with the Modified Consent Decree.

24. The United States has the right to request additional information and data regarding the City's administration of Police Officer selection devices. The City will cooperate with the United States' request(s) for any additional information related to the administrations of selection device(s) (e.g., application, multiple choice examination, written examination, reading

examination, video test, report writing test, physical agility test) that has been used as part of the application, selection, and hiring process for the Police Officer position in the CPD during the relevant time period.

**B.      Review of Police Sergeant Promotions**

25.      Production of Police Sergeant Promotional Data from June 2018-Entry of Decree: No later than thirty (30) days after the date of entry of the Decree, the City shall provide to the United States the following data upon which any eligibility list was based for the Police Sergeant position from June 2018 through the date of entry of this Decree.

  a.  Information identifying (by title, series or identification number, vendor, and author/developer) and describing each selection device (e.g., application, multiple choice examination, written examination, reading examination, video test, report writing test, physical agility test) that has been used as part of the application, selection, and hiring process for the Police Sergeant position in the CPD during the relevant time period.

  b.  Information in Excel format identifying the name, unique identifier, gender, race, scores and applicable sub-scores on all components of the selection process, any applicable combined and final scores, military, veteran's, seniority, or other bonus points, and the ranks for each applicant who participated in the selection process, if applicable, whether the applicant was disqualified or hired, the date of disqualification or hire, or other reason the applicant was not selected (e.g., withdrew from process, declined offer, not reached on eligibility list, etc.).

14

c. Information relating to the scoring system and any passing or cut-off score applicable to each selection device identified in sub-part (a) herein, including the manner in which the selection device has been used as part of the application, selection, and hiring process (e.g., whether it has been used on a pass/fail basis, for ranking applicants, for banding), and the distribution of scores by race and sex for each administration of each selection device.

d. Documentation that purports to validate the City's use of the selection device(s) identified in sub-part (a) (i.e. validity report, exam development material, administration and scoring instructions, transportability study, etc.).

26. Production of Police Sergeant Promotional Data after Entry of Decree: No later than thirty (30) days after the completion of the administration and scoring of the City's first promotional examination after the entry of the Modified Consent Decree on which any Police Sergeant eligibility list may be based, the City will provide the following information.

a. Information identifying (by title, series or identification number, vendor, and author/developer) and describing all components of the promotional examination.

b. Information in Excel format identifying the name, unique identifier, gender, race, scores and applicable sub-scores on all components of the promotional examination, any applicable combined and final scores, military, veteran's, seniority, or other bonus points, and the ranks for each applicant who participated in the promotional examination, if applicable.

c. Information relating to the scoring system and any passing or cut-off score

applicable to all components of the promotional examination identified in sub- part (a) herein, including the manner in which all components of the promotional examination has been used as part of the application, selection, and hiring process (e.g., whether it has been used on a pass/fail basis, for ranking applicants, for banding), and the distribution of scores by race and sex for each administration of each selection device.

d. Documentation that purports to validate the City's use of the promotional examination identified in sub-part (a) (i.e. validity report, exam development material, administration and scoring instructions, transportability study, etc.).

27. If the United States determines based on its review of the information provided pursuant to Paragraphs 25-26 that the City's use of the selection devices do not comply with Title VII and with this Modified Decree, the United States shall notify the City in writing that it objects to the City's use of the promotional examination. The United States shall provide such notice no later than ninety (90) days after receipt of the information required by Paragraphs 25-26, and the Parties shall meet and confer in good faith to attempt to resolve any objection(s). If the United States and City are unable to resolve such a dispute within twenty-one (21) days of the date of the United States' objections, the United States or the City will follow the procedures set forth in Paragraph 35 regarding disagreement as to compliance with the Modified Consent Decree.

28. Within ninety (90) days of the City providing the information identified in Paragraphs 25 and 26, the United States must either propose an alternative use of the promotional examination that is substantially equally valid to the City's use and results in less disparate impact

16

on the basis of race or sex, or notify the City that it has not identified such an alternative use. If the United States makes an alternative use proposal, it will provide the City with a written justification of the proposal explaining its analyses. The City will evaluate whether it will adopt the alternative use recommended by the United States and inform the United States of its decision within thirty (30) days of receiving the United States' proposal. The Parties shall meet and confer in good faith to attempt to resolve any disagreement. If the United States and City are unable to resolve such a dispute within twenty-one (21) days of the date of the United States' objections, the United States or the City will follow the procedures set forth in Paragraph 35 regarding disagreement as to compliance with the Modified Consent Decree.

29. The United States has the right to request additional information and data regarding the City's administration of Police Sergeant selection devices. The City will cooperate with the United States' request(s) for any additional information related to the administrations of selection device(s) (e.g., application, multiple choice examination, written examination, reading examination, video test, report writing test, physical agility test) that has been used as part of the application, selection, and hiring process for the Police Sergeant position in the CPD during the relevant time period.

30. Upon resolution of any disagreements between the Parties or resolution by the Court, the City shall certify the eligibility lists for Police Officer and Police Sergeant.

## VII. RECORD KEEPING REQUIREMENTS

31. While this Modified Consent Decree remains in effect, the City Defendants shall maintain all of the following records (including those created or maintained in electronic form):

    a. all applications for Police Officer and Police Sergeant positions;

17

     b.   all documents relating to the screening, evaluation or selection of applicants for the position of Police Officer and Police Sergeant; and

     c.   all other documents relating to the City Defendants' compliance with the requirements of this Modified Consent Decree.

32.    Except as otherwise provided in this Modified Consent Decree, the City Defendants will make available to the United States, no later than thirty (30) days after the United States so requests in writing, any records maintained in accordance with the preceding paragraph of this Modified Consent Decree and any additional documents relating to any dispute arising under the Modified Consent Decree.

33.    When possible, all records furnished to the United States shall be provided in a searchable computer-readable format to be agreed upon by the Parties prior to production.

34.    Within thirty (30) days after the United States so requests in writing, or other time agreed to by the Parties, the City Defendants shall make available for interview or deposition (at the United States' option) any agent, employee or official of the City Defendants who the United States reasonably believes has knowledge of information necessary to verify the City Defendants' compliance with the terms of this Modified Consent Decree or to resolve a dispute arising under this Modified Consent Decree.

35.    The Parties shall attempt in good faith to resolve informally any disputes that arise under this Modified Consent Decree. If the Parties are unable to resolve the dispute expeditiously, either party may submit the disputed issue to the Court for resolution upon seven (7) days written notice to the other party, unless a different time period has been specified elsewhere in this Modified Consent Decree.

## VIII.   DURATION OF MODIFIED CONSENT DECREE

36.     This Modified Consent Decree shall be dissolved and this action shall be dismissed, without further order of the Court, upon the occurrence of the later of the following two events: (a) thirty (30) days after the United States provides written assurance that it has no further objections to the City's response or, absent agreement, where ordered by this Court as described in Paragraph 17 or (b) thirty (30) days after the Parties resolve any disputes or the Court orders relief as described in Paragraphs 23, 27 and 28.

## IX.   COSTS AND FEES

37.     Each party shall bear its own costs and expenses incurred as a result of obligations imposed by this Modified Consent Decree.

38.     Each party shall bear its own costs, expenses, and attorneys' fees incurred in this litigation.

## X.   MISCELLANEOUS

39.     The Court shall retain jurisdiction over this Modified Consent Decree for the purpose of resolving any disputes or entering any orders that may be appropriate to implement the Modified Consent Decree, including joining any parties whose joinder is necessary to accord complete relief under this Modified Consent Decree.

40.     The United States and the City may agree to modifications of the time limits for the performance of the provisions set forth in this Decree without Court approval.

41.     This Modified Consent Decree constitutes the entire agreement of the Parties, and supersedes all prior agreements, decrees, representations, negotiations and undertakings not set forth or incorporated herein.

42.     Where possible, all documents required to be delivered to the United States under this Decree shall be sent via electronic mail to Jeremy Monteiro (at jeremy.monteiro@usdoj.gov) and Catherine Sellers (at catherine.sellers@usdoj.gov). Where such electronic mail is not possible, documents shall be sent *via overnight delivery* to:

> Jeremy Monteiro
> Catherine Sellers
> Employment Litigation Section
> Civil Rights Division
> United States Department of Justice
> 4 Constitution Square
> 150 M Street, NE
> Washington, DC 20530

43.     All documents required to be delivered under this Decree to the City shall be sent via electronic mail where possible to Emily Smart Woerner (at emily.woerner@cincinnati-oh.gov) and William Hicks (at william.hicks@cincinnati-oh.gov). Where such electronic mail is not possible, documents shall be sent via overnight delivery to:

> City Solicitor
> City of Cincinnati Solicitor's Office Labor & Employment Section
> Law Department
> 801 Plum Street, Room 214
> Cincinnati, OH 45202

It is so **ORDERED**, this_____day of_____, 2022

_____
UNITED STATES DISTRICT JUDGE

20

*/s/ Emily Smart Woerner*
EMILY SMART WOERNER (0089349)
City Solicitor

WILLIAM C. HICKS (0068565)
MARK R. MANNING (0088331)
ASSISTANT CITY SOLICITORS
Labor & Employment Section
Law Department
801 Plum Street, Rm. 214
Cincinnati, OH 45202
Telephone: (513) 352-3334

Counsel for Defendants City of Cincinnati,
the Cincinnati Police Department and the
Cincinnati Civil Service Commission

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD (MD Bar, no
number issued)
Chief
Employment Litigation Section
Civil Rights Division

MEREDITH L. BURRELL (MD Bar, no
number issued)
Principal Deputy Chief
Employment Litigation Section
Civil Rights Division

*/s/ Jeremy P. Monteiro*
JEREMY P. MONTEIRO (GOVT. DC Bar
977628)
Senior Trial Attorney
United States Department of Justice
Employment Litigation Section
Civil Rights Division
4 Constitution Square
150 M Street, NE, Room 9.930
Washington, DC  20530
(202) 307-6230
(202) 514-1005 (fax)
jeremy.monteiro@usdoj.gov

*/s/ Catherine N. Sellers*
CATHERINE N. SELLERS (GOVT. WA
Bar 44563)
Senior Trial Attorney
United States Department of Justice
Employment Litigation Section
Civil Rights Division
4 Constitution Square
150 M Street, NE, Room 9.1802
Washington, DC  20530
(202) 598-0696
(202) 514-1005 (fax)
catherine.sellers@usdoj.gov

21

Counsel for Plaintiff United States